UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD BEDEN,

    Plaintiff,

v.                                           Case No. 10-cv-14851
                                            Paul D. Borman
                                            United States District Judge

UNITED AUTO WORKERS LOCAL 9699,
RYDER LOGISTICS

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkt. Nos. 17 and 18),
and DISMISSING THE ACTION**

Donald Beden ("Plaintiff") filed his *pro se* Complaint in this action on December 7, 2010. (Dkt. No. 1.) The Defendants are Plaintiff's former employer, Ryder Logistics, and former union, the United Auto Workers Local 9699[1] (the "UAW") (collectively, "Defendants"). The Amended Complaint, filed on February 14, 2011 (Dkt. No. 16), alleges the following causes of action: (1) fraud, (2) civil conspiracy, (3) mail fraud, (4) "Fourth Amendment Right [sic]," and (5) breach of contract. (Am. Compl. ¶ 5.)

On March 1, 2011, both Defendants filed motions to dismiss. (Dkt. Nos. 17 and 18.) Plaintiff filed a Response on March 7, 2011 (Dkt. No. 20.), and a second Response on April 29,

---

[1] The Amended Complaint also names certain members of the International Union, United Automobile Aerospace and Agricultural Implement Workers of America, but Plaintiff has only served Defendants Ryder Logistics and the UAW.

1

2011 (Dkt. No. 36). Neither Defendant has filed a Reply. Plaintiff did not appear at the hearing, which the Court held on August 18, 2011.

For the reasons stated below, the Court will:

(1) Grant Defendants' Motions to Dismiss, and

(2) Dismiss the action.

## I. BACKGROUND

The facts as alleged in the Amended Complaint are taken as true for purposes of the instant motions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

Plaintiff was employed by Defendant Ryder Logistics as a forklift operator. He alleges that he was laid off in December 2008 after Pam Nelson, a human resources employee for Defendant Ryder Logistics, accused Plaintiff of committing unemployment fraud. On February 3, 2009, Nelson called Plaintiff to her office to conduct an investigatory interview regarding the unemployment fraud accusation. Plaintiff alleges that a union representative was available via speaker phone at this meeting, but was muted or silenced. At the conclusion of the February 3, 2009 interview, Nelson terminated Plaintiff's employment. Nelson informed Plaintiff that he had violated Article XIII, Section 1 of his labor agreement, which provided for discharge for dishonesty/theft offenses.

The Arbitration Decision[2] provides the following relevant background concerning Nelson's accusation and Plaintiff's termination:

> Employees are eligible for unemployment benefits when

---

[2]The Arbitration Decision is incorporated into the Amended Complaint at ¶ 29 and is central to Plaintiff's claim. It may therefore be considered by the Court on a motion to dismiss. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

> there is a lack of work, such as when the warehouse shuts down following a GM shutdown. To apply for unemployment benefits, the employee places a call to MARVIN, an automated State sponsored phone system, which prompts the caller to answer certain questions so as to determine eligibility. The grievant called MARVIN, and answered certain questions, such as whether he had earnings for the week in which he was applying for unemployment benefits. He acknowledged in his testimony that MARVIN warned him against filing fraudulent claims when he called in to apply for unemployment benefits.
>
> In December, 2008, the company noticed that employees who were actually working and earning wages for certain weeks, had also applied for unemployment benefits. Human Resources Manager Nelson compared the claims filed by the employees with payroll records and the weeks that the facility was shut down and employees on layoff. She testified that she found that there were about 38 union employees, including the grievant, who had collected unemployment benefits while actually working and being paid wages. All of these employees were suspected of unemployment fraud and so were interviewed by Nelson with a UAW representative present. When called for such interview on February 3, 2009, the grievant hung up on Nelson. The investigation showed, and the grievant admitted in his testimony, that for the week ending December 13, 2008, he received $794.29 in pay and also collected $247 in unemployment benefits.

(Def. Ryder Logistic's Mot., Ex. B, Arbitration Decision at 1-2.)

Plaintiff alleges that after he was terminated, Union Representative Oscar Johnson filed a grievance on Plaintiff's behalf, but "it was null and avoid, [sic] because Defendant Oscar Johnson was unemployed." (Am. Compl. ¶ 9.) Plaintiff alleges that "Defendant Union Local 9699 . . . was aiding and abetting the company in Plaintiff Donald Beden termination [sic]." (Am. Compl. ¶ 11.)

On February 25, 2009, Nelson and Union representatives Darryl Bragg and Jeff Johnson, called Plaintiff and informed him that he could return to work on a last chance basis, contingent

3

on his signing a last chance agreement. Plaintiff declined the offer. Later, Nelson contacted Plaintiff and informed him a second time about the available last chance agreement, and requested that he return to work on March 9, 2009.[3] Plaintiff "refused to return back to work without the Union informing [him] to do so." (Am. Compl. ¶ 14.) On March 12, 2009, Plaintiff received a letter via FedEx stating that his employment with Defendant Ryder Logistics had again been terminated.

The Arbitration Decision provides as follows with regard to the last chance agreement:

> The union filed a grievance on [Plaintiff's] behalf and for the other employees and an understanding was reached between the union and the company – individuals with three weeks or less of fraudulent claims were returned to work on a last chance basis and suspended for the number of weeks of the fraudulent claims. On February 25, 2009, Nelson, along with Union Representatives Bragg and Johnson present, called the grievant to explain the last chance agreement opportunity. The grievant again hung up the phone.
>
> The grievant was the only employee who did not sign the last chance agreement. On March 5, 2009, Nelson, again with UAW Representative Bragg present, called the grievant and instructed him specifically to return to work on Monday, March 9, 2009. She indicated that she wanted to give him another chance to reconsider and clearly stated the expectation and date of his return to work. A confirming letter was sent that same day which reminded the grievant, again, that if he failed to return to work, in accordance with the letter, the work rules and collective bargaining agreement would be applied. Article XIII, Section 1 provides that no prior warning is needed before terminating an employee who is absent for 3 consecutive work days without notifying the employer.
>
> The grievant failed to return to work on Monday, March 9, 2009, Tuesday, March 10, 2009, and Wednesday, March 11, 2009,

---

[3]Plaintiff alleges that no Union representative was available the second time Nelson contacted him. (Am. Compl. ¶ 14.) This conflicts with the Arbitration Decision's fact section, as noted *infra*.

4

>and his employment was again terminated. A termination letter to
>that effect was sent.

(Arbitration Decision at 3.)

Plaintiff alleges that "Defendant Union Local 9699 did not file a grievance on behalf [of] Plaintiff [sic] second termination" (Am. Compl. ¶ 16.); however, Plaintiff also states that "Defendant [International Union Representative] Mike Stone took the greivance [sic] to arbitration without any facts in the case." (Am. Compl. ¶ 22.) The Arbitration Decision states that a grievance was filed on Plaintiff's behalf after his second termination. (Arbitration Decision at 3.)

On September 30, 2009, an Arbitration Decision was issued denying Plaintiff's grievance and finding that Defendant Ryder Logistics had just cause to terminate his employment. (Arbitration Decision at 9.) Although Plaintiff does not specifically allege inadequate representation, the Amended Complaint notes that his Union Representative at the arbitration proceedings, Michael J. Stone, did not object to Ryder's questioning about "irrelevant" unemployment benefits received by Plaintiff, and did not cross examine Nelson at the hearing. (Am. Compl.¶¶ 27-28.)

After the Arbitration Decision, Plaintiff alleges that he requested information regarding "who negotiated [his] March 9, 2009, return to work date." (Am. Compl. ¶ 30.) Plaintiff also requested information regarding a March 5, 2009 meeting,[4] because he "wanted to know

---

[4]Plaintiff alleges that a meeting occurred on March 5, 2009, because Union Representative Darryl Bragg testified at the arbitration proceedings that he was not present when Nelson called Plaintiff on March 5, 2009, but that "he may have some notes." (Am. Compl. ¶ 25, 30.) However, Bragg has denied that any meeting took place on March 5, 2009. (Am. Compl. ¶ 32.) Plaintiff also alleges that Brian A. Kreucher, the representative for Defendant Ryder Logistics at the arbitration proceedings, believes there was a meeting on that date and that Bragg

5

specifically when [International Union Representative] Stone got involved with [his] grievance." (*Id.*)

Plaintiff filed two charges against the International Union with the United States National Labor Relations Board. (Am. Compl. ¶¶ 29, 33.) Plaintiff does not state the outcome of the first charge, but does admit that the second charge was denied. (Def. Ryder Logistic's Mot., Ex. C, NLRB Decision.)

## II. STANDARD OF REVIEW

Defendants have both filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A motion to dismiss tests a plaintiff's claims for facial plausibility, or "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[a] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976)). Still, even under this lenient standard, *pro se* plaintiffs must meet basic pleading requirements and court-imposed deadlines. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

---

was present. (Am. Compl. ¶ 33.)

6

## III. ANALYSIS

Both Defendants argue that Plaintiff's claims are barred by the statute of limitations applicable to claims brought under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. In addition, Defendant Ryder Logistics argues that Plaintiff's fraud and civil conspiracy claims are barred by *res judicata*, and that Plaintiff lacks standing to bring claims for mail fraud and Fourth Amendment violations.

Plaintiff's first Response consisted of a single sentence that stated as follows: "NOW COMES Plaintiff Donald Beden and states in response to Defendant's Motion to Dismiss Complaint is denied. [sic]" In his second Response, Plaintiff asserts that he has a right to bring an action under the LMRA, but does not substantively address Defendants' arguments regarding the statute of limitations, *res judicata*, or standing.

After the instant motions to dismiss were filed, Plaintiff also filed a Motion to Amend the Complaint (Dkt. No. 27), and a Motion Challenging Jurisdiction[5] (Dkt. No. 37). Plaintiff's Motion to Amend was denied by the Magistrate Judge on April 21, 2011. (Dkt. No. 34.) His Motion Challenging Jurisdiction was denied on June 29, 2011. (Dkt. No. 39.)

## IV. DISCUSSION

### A. Plaintiff's Intentional Tort Claims Are Precluded By the LMRA

The Amended Complaint alleges fraud and breach of contract against Plaintiff's former employer and labor union. Specifically, Plaintiff alleges that Defendant Ryder Logistics falsely accused him of unemployment fraud, and his union assisted Ryder in this fraud, resulting in

---

[5]Like Plaintiff's first Response, his Motion Challenging Jurisdiction consisted of a single sentence that stated "Plaintiff Challenge [sic] Federal Court Jurisdiction."

Plaintiff's discharge in violation of the collective bargaining agreement. (Am. Compl. ¶¶ 39-40.)

The Supreme Court has held that:

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). A district court must therefore treat state law claims that depend on the analysis of a labor contract "as a § 301 claim,"[6] or as a claim that is otherwise preempted by federal labor-contract law. *Id.* at 220. However, rights that are created by state law, and claims that are "'independent' of rights under the collective-bargaining agreement," are not precluded by federal law. *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

In determining whether state-law claims are preempted by § 301, the Court applies a two-part test:

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law . . . . If the rights were created by the collective

---

[6]Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States . . . .
>
> . . . . Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States.

29 U.S.C. § 185(a)-(b).

8

bargaining agreement, the claim is preempted.

*Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216-17 (6th Cir. 1994)).[7]

Plaintiff's claims for breach of contract and fraud fail both prongs of the *Mattis* test, and are thus clearly preempted by § 301. Plaintiff's breach of contract claim is based on his rights as established under the collective bargaining agreement, and will therefore require interpretation of the terms of that agreement. Likewise, Plaintiff's right to fair union representation was created by the collective bargaining agreement, not by state law. Accordingly, Plaintiff's state law claims are properly treated as claims under § 301 of the LMRA.

**B. Plaintiff's § 301 Claim Is Barred by the Statute of Limitations**

A hybrid § 301/unfair representation action consists of two constituent claims: "breach of collective bargaining agreement and breach of a union's duty of fair representation[.]" *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990). "A six month limitations period, as established in § 10(b) of the [National Labor Relations Act],[8] applies to suits of this type." *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 578 (6th Cir. 1987). "As a general

---

[7]Although neither Defendant addressed the two-part test in its brief, it is unclear whether Plaintiff in his second Response concedes that his claim arises under § 301 or argues that it is purely a state-law claim. He states that claims for breach of a collective bargaining agreement are "well established," but also argues that he was unemployed at the time he was discharged, and that the LMRA therefore should not apply to him. (Pl.'s Resp. 8-9.) At any rate, to the extent he argues that he was unemployed, his argument is without merit because Defendant Ryder Logistics had reinstated him as part of the last chance agreement deal with the Defendant union.

[8]Section 10(b) of the National Labor Relations Act, as codified in 29 U.S.C. § 160(b), states: "That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge . . . ."

rule, the limitations period begins to run when the potential plaintiff 'knows or should have known of the union's alleged breach of its duty of fair representation.'" *Ratkosky v. United Transp. Union*, 843 F.2d 869, 873 (6th Cir. 1988) (quoting *Dowty v. Pioneer Rural Elec. Co-op. Inc.*, 770 F.2d 52, 56 (6th Cir. 1985)).

Plaintiff alleges that Defendant Local 9699 breached its duty of fair representation when it filed the initial grievance in this case, which Plaintiff alleges was "null and void." (Am. Compl. ¶ 9.) Plaintiff also alleges that the last chance agreement that Defendant Local 9699 helped negotiate was part of "a malicious prosecution." (Am. Compl. ¶ 12.) Plaintiff further alleges that his Union Representative allowed "irrelevant evidence" and failed to cross examine a key witness at the arbitration hearing. (Am. Compl. ¶¶ 24, 28.)

Based on the Amended Complaint, the latest date on which Plaintiff knew or should have known of his § 301 claim was most likely in October 2009, after he received an adverse decision from the arbitrator. *Lipp v. Shue & Voeks, Inc.*, 961 F.2d 1577 (6th Cir. 1992) (unpublished table decision) (noting that an adverse arbitration ruling "is essential to a § 301 claim and, as such, a cause of action under § 301 cannot accrue until the arbitrator issues a decision."). However, Plaintiff did not file the original Complaint until more than a year later on December 7, 2010.

Even if the Court assumes that Plaintiff tolled the statute of limitations by filing two grievances with the NLRB, Plaintiff admits that the second grievance was denied sometime before February 26, 2010. (Am. Compl. ¶ 33.) Accordingly, the latest Plaintiff could have filed his Complaint was likely August 2010. Because he did not file until December 7, 2010, his claims under § 301 are barred by the statute of limitations.

## C. Plaintiff's Civil Conspiracy Claim Is Barred by Collateral Estoppel

"A civil conspiracy is the 'combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.'" *Wrobbel v. Int'l Brotherhood of Elec. Workers, Local 17*, 638 F. Supp. 2d 780 (E.D. Mich. 2009) (quoting *Admiral Ins. Co. v. Columbia Casualty Ins.*, 194 Mich. App. 300, 313 (1992)).

Defendant Ryder Logistics argues that Plaintiff's civil conspiracy claim is barred by *res judicata*. "Res judicata bars the relitigation of the same claim or cause of action while collateral estoppel bars the relitigation of the same issue." *Drummond v. Com'r of Soc. Security*, 126 F.3d 837, 480 (1997) (citation and internal quotation marks omitted).

While Plaintiff's civil conspiracy claim has not been previously determined, and is therefore not barred by *res judicata*, an essential element of the claim has been determined. In its December 7, 2009 NLRB Decision[9] dismissing Plaintiff's grievance, the NLRB stated:

> The investigation failed to disclose sufficient probative evidence that the Union's actions in handling Beden's discharge grievance were unlawfully motivated. Therefore, it cannot be established that the Union breached its duty of fair representation.

(NLRB Decision at 4-5.)

"[O]nce an issue has been fully litigated and necessarily determined by an adjudicatory body, a party and its privies are precluded from raising that issue in a subsequent proceeding." *Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 260 (6th Cir. 1991) (*compare with Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 547 (6th Cir. 2008) (holding that

---

[9]The NLRB Decision is a public record and may be considered in deciding a motion to dismiss. *Commercial Money Center, Inc. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007).

issue preclusion does not apply where the plaintiff's claim is based on a statutory right and the previous determination decided contractual rights).

Plaintiff's claim that Defendant UAW acted unlawfully during its representation of Plaintiff leading up to and during the arbitration proceeding has been previously determined by the NLRB. As a result, Plaintiff is now estopped from asserting that Defendant acted unlawfully in this subsequent judicial proceeding between the same parties. Plaintiff's civil conspiracy claim will therefore be dismissed.

**D. Plaintiff Lacks Standing to Assert Mail Fraud and Fourth Amendment Violations**

Plaintiff alleges that Defendants are liable to him for criminal mail fraud, pursuant to 18 U.S.C. § 1341. (Am. Compl. ¶ 41.) The Sixth Circuit has held that there is no private right of action under the mail fraud statute. *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178-79 (6th Cir. 1979) (concluding that "Congress did not intend to create a private cause of action for plaintiffs under the Mail Fraud Statute."). Accordingly, Plaintiff's mail fraud claim must be dismissed.

The Amended Complaint also alleges "Fourth Amendment Right" as a cause of action. (Am. Compl. ¶ 5.) A constitutional deprivation claim requires state action, and does not include "merely private conduct, no matter how discriminatory or wrongful[.]" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citations omitted). Plaintiff does not allege that either Defendant was acting under color of state law in terminating his employment or representing him during the grievance process. Plaintiff's Fourth Amendment claim must, therefore, be dismissed.

## V. CONCLUSION

For the reasons stated below, the Court will:

(1) **GRANT** Defendants' Motions to Dismiss, and

(2) **DISMISS** the action **WITH PREJUDICE**.

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

Dated: 8-29-11
Detroit, Michigan